IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DAVID JOHNSON,

     Plaintiff,                         No. CIV S-05-01254 PAN

     vs.

JO ANNE B. BARNHART,
Commissioner of Social Security,

     Defendant.                  <u>ORDER</u>

        The case is before the undersigned pursuant to 28 U.S.C. § 636(c)(consent to proceed before a magistrate judge).  Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act").  For the reasons discussed below, the court will deny plaintiff's motion for summary judgment or remand and grant the Commissioner's cross-motion for summary judgment.

/////
/////
/////
/////
/////
/////

1

I. <u>Factual and Procedural Background</u>

In a decision dated October 21, 2004, the ALJ determined plaintiff was not disabled.[1] The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review. The ALJ found that plaintiff has the severe impairments of schizophrenia /psychotic disorder, but that these impairments do not meet or medically equal a listed impairment; neither plaintiff's nor his mother's testimony was credible; plaintiff remains capable of performing heavy work; plaintiff's nonexertional limitations prevent him from performing anything more than unskilled work; plaintiff can not perform work that requires frequent social interaction; plaintiff's capacity for work has not been significantly

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 <u>et seq</u>. Supplemental Security Income ("SSI") is paid to disabled persons with low income.  42 U.S.C. § 1382 <u>et seq</u>.  Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).  A five-step sequential evaluation governs eligibility for benefits.  <u>See</u> 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; <u>Bowen v. Yuckert</u>, 482 U.S. 137, 140-42 (1987).  The following summarizes the sequential evaluation:

> Step one:  Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.
> Step two:  Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.
> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

<u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  <u>Bowen</u>, 482 U.S. at 146 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  <u>Id</u>.

2

compromised by his limitations; and plaintiff is not disabled.  Administrative Transcript ("AT") 279.  Plaintiff contends that the ALJ erred by failing to give the opinion of the treating physician controlling weight as well as by failing to call a vocational expert to testify at the administrative hearing.

II. Standard of Review

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards under 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it.  Copeland v. Bowen, 861 F.2d 536, 538 (9th Cir. 1988) (citing Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 575-76 (9th Cir. 1988)).  Substantial evidence means more than a mere scintilla of evidence, but less than a preponderance.  Saelee v. Chater, 94 F.3d 520, 521 (9th Cir. 1996) (citing Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975)).  "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 402, 91 S. Ct. 1420 (1971) (quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229, 59 S. Ct. 206 (1938)).  The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed.  See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985).  The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence.  Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence, see Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

/////

/////

1  III.  Analysis

2      a.  The ALJ's Weighing of the Medical Evidence was not in Error.

3  The ALJ gave no weight to the opinion of plaintiff's treating physician, Dr. Stansell.  AT 276.  In reaching this finding, the ALJ noted that Dr. Stansell's conclusory opinion relied solely upon the medical history provided by plaintiff and did not review any medical records prior to his initial assessment of plaintiff's limitations.  Id.  Furthermore, the ALJ found Dr. Stansell's opinion was not supported by the clinical findings of his examination, nor was it supported by the subsequent medical records that showed plaintiff's mental impairments to be of lesser severity and well controlled with medication.  Id.

The ALJ's conclusion was not in error.  The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record; and (2) clinical findings support the opinions.  An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons.  Lester, 81 F.3d at 831.  In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence.  Lester, 81 F.3d at 830.  While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings.  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir.1999) (treating physician's conclusory,

minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional.  Lester, 81 F.3d at 831.

      Dr. Stansell, a family practitioner, first treated plaintiff starting on June 7, 2001.  During his initial evaluation, Dr. Stansell took an extensive oral history from the plaintiff, noting his numerous complaints of physical and mental impairments.  AT 218-20.  Dr. Stansell found plaintiff to suffer from arthralgia, or joint pain, in his right knee, as well as mild prostate hyperplasia, or an increase in the size of the prostate.  AT 220.  The remainder of Dr. Stansell's physical examination was normal and there were no notable limitations found.  AT 219-20.

      Dr. Stansell's mental evaluation noted plaintiff's subjective complaints of depression, auditory and visual hallucinations, and trouble sleeping, as well as a family history of schizophrenia.  AT 218.  Dr. Stansell found plaintiff to have a flat affect and diagnosed possible schizophrenia.  AT 219-20.  His treatment plan called for plaintiff to continue taking anti-psychotic medications that had recently been prescribed, including Risperdal, used in the treatment of schizophrenia and mania associated with bipolar disorder, and Depakote, an anti-seizure medication also used to treat schizophrenia and schizoaffective disorder.  AT 220.  In addition, Dr. Stansell requested a psychiatric consult.  Id.

      In conjunction with this initial examination, Dr. Stansell completed a medical assessment of plaintiff's ability to perform work.  AT 222-26.  This assessment found a number of exertional limitations.  According to Dr. Stansell, plaintiff's arthralgia imposed an unspecified physical restriction on plaintiff's ability to lift and carry.  AT 222.  Plaintiff's mental impairment and the medications used to treat them limited plaintiff's ability to speak as well as his ability to operate machinery or at heights.  AT 223.

      Plaintiff's nonexertional limitations were more significant.  Dr. Stansell stated that plaintiff was only fair or worse in every mental category except his ability to maintain personal appearance, in which he was rated good.  AT 225-26.  This low assessment was the

5

result of Dr. Stansell's conclusion that plaintiff suffered from "mental illness, possibl[y] schizophrenia." Id.

In spite of Dr. Stansell's recommendation, no psychiatric follow-up appears in the record. However, in subsequent appointments, Dr. Stansell continued to diagnose plaintiff with schizophrenia. AT 236 (June 28, 2001), AT 232 (August 30, 2001), AT 231 (October 11, 2001), AT 228 (December 13, 2001), AT 227 (February 21, 2002). Throughout the course of these evaluations, no additional findings were made, nor were any tests conducted, and plaintiff's prescription medication schedule remained constant with no adjustments or corrections required.

In his rationale for giving no credit to the medical opinion of plaintiff's treating physician, the ALJ provided specific and legitimate reasons supported by substantial evidence in the record. The ALJ refused to credit Dr. Stansell's initial opinion because of his failure to review any of plaintiff's medical history. In addition, the ALJ noted the essentially normal findings of the evaluation, the lack of any objective testing reviewed or conducted by Dr. Stansell to support his opinion, and the numerous contrary opinions in the record. Finally, the ALJ discounted Dr. Stansell's opinion because of its reliance upon the less than credible subjective history provided by plaintiff.[2]

The ALJ noted that the record is devoid of any evidence that Dr. Stansell reviewed the medical history or conducted any objective testing in order to evaluate plaintiff's mental condition. Conclusory opinions may be properly discounted by the ALJ. See Meanel,

---

[2] Plaintiff focuses his appeal on the ALJ's rejection of Dr. Stansell's opinion as it concerns an alleged mental impairment. However, the reasons provided by the ALJ for rejecting Dr. Stansell's opinion as it concerned plaintiff's mental issues also support rejection of that opinion as it concerns plaintiff's physical complaints. Dr. Stansell's findings of knee pain and prostate issues are not objectively supported in the record through testing, x-rays, a course of treatment, or other medical opinions. Furthermore, as noted in his opinion, the ALJ found plaintiff to be less than fully credible, therefore, his subjective complaints of pain, when not supported by objective evidence in the record, may be properly discounted. See Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)(finding that in evaluating whether subjective complaints are credible, the ALJ should first consider objective medical evidence and then consider other factors).

1  172 F.3d at 1113.  The absence of any medical records to support his findings, or objective
2  evidence from other health care providers casts doubt upon the assertions of the treating
3  physician.  See Batson v. Comm'r of Social Security Administration, 359 F.3d 1190, 1195 (9th
4  Cir. 2004)(giving minimal weight to treating physicians opinions when clinical findings are not
5  present); Young v. Heckler, 803 F.2d 963, 968 (9th Cir. 1988)(discrediting medical opinion of
6  treating physician who had prior relationship with claimant where only report in record was in
7  conclusory form).  When contradicted, the treating physician's opinion is entitled to controlling
8  weight only when it is "well-supported by medically acceptable clinical and laboratory diagnostic
9  techniques[.]" 20 C.F.R. §416.927(d)(2).  Without more to support his statements about the
10 extent of plaintiff's disability, the conclusions drawn by Dr. Stansell may be discredited in light
11 of other opinions and evidence in the record.

12         A significant number of contrary opinions by examining and nonexamining
13 physicians exist in the record.  The record contains extensive notes of examinations conducted by
14 treating physicians and other medical personnel in conjunction with plaintiff's periods of
15 incarceration.  These records consistently document complaints of mental and physical
16 impairment.   However, none of the records detail any functional limitations as a result of
17 plaintiff's complaints.  Furthermore, the most recent records from May 11, 2004, find plaintiff to
18 be doing well on his current medications, without hallucinations, sleeping soundly, with a normal
19 affect and mood, and with a calm and pleasant manner.  AT 333.

20         The ALJ also evaluated multiple opinions from examining mental health
21 professionals.  On July 20, 2004, Dr. Daigle conducted a complete psychiatric examination of
22 plaintiff.  Dr. Daigle found plaintiff to suffer from a chronic psychotic disorder that was probably
23 schizophrenic in nature.  AT 327.  As a result of this condition, Dr. Daigle opined that plaintiff
24 had little to slight limitations in his ability to carry out simple tasks, and slight limitations in his
25 ability to complete complex tasks.  AT 329.  Furthermore, Dr. Daigle noted that plaintiff was
26 moderately to markedly limited in his ability to relate and interact with others; moderately

limited in his ability to maintain concentration, persistence, and pace; moderately limited in his ability to associate with day-to-day work activity; and moderately limited in his ability to adapt to the stresses of a normal work environment.  AT 328.

Dr. Foster performed a comprehensive psychological examination of plaintiff on December 21, 2000, that included a series of psychological tests along with an extensive evaluation.  AT 168-73.  As noted by the ALJ in his findings, Dr. Foster found plaintiff to be normal in several areas, including his ability to understand, remember, and carry out simple one or two-step job instructions; and his ability to maintain concentration, persistence, and pace.  AT 172.  Plaintiff's most severe limitations were a moderate impairment in the ability to relate and interact with coworkers and superiors, the ability to deal with the public, the ability to withstand the stress of day-to-day work, and the ability to complete a normal workday or work week.  Id.

The ALJ also evaluated both of the State Agency reports contained in the record.  AT 275-76.  The initial State Agency evaluation completed on January 10, 2001, found plaintiff to be not significantly limited in any mental activity.  AT 175-76.  According to the State Agency, plaintiff's functional limitations were only mild.  AT 198.  See 20 C.F.R. 404.1520a(d)(1)("[i]f we rate the degree of your limitation in the first three functional areas as 'none' or 'mild'...we will generally conclude that your impairment(s) is not severe").  The non-examining physician with the State Agency noted that plaintiff's complaints of hallucinations were not credible and his family history of mental illness was irrelevant to this claim.  AT 192.

A second State Agency evaluation on February 26, 2001, found plaintiff to be moderately limited in several mental activities.  These activities included the ability to maintain concentration, to perform activities on a schedule, to work in proximity to others without distraction, to complete a normal work week without interruption, to interact with the general public and coworkers, to respond appropriately to changes in the work setting, to be aware of normal work hazards, and to set realistic goals and make plans independently of others.  AT 196-97.  As a result, the State Agency found plaintiff to be mildly limited in his daily living, and

8

1  moderately limited in his ability to maintain social functioning, as well as concentration,
2  persistence, and pace.  AT 210.

3  The overwhelming majority of these contrary opinions were provided by mental
4  health professionals.  In contrast, plaintiff's treating physician was a family practitioner with no
5  particular specialty in mental health assessments or treatment.  The ALJ's reliance on the
6  opinions of specialists was not in error.  See 20 C.F.R. § 404.1527(d)(5)("We generally give
7  more weight to the opinion of a specialist about medical issues related to his or her area of
8  specialty than to the opinion of a source who is not a specialist.")

9  In addition, the ALJ found plaintiff to be not fully credible.  AT 279.  Credibility
10 determinations do factor into evaluations of medical evidence.  Webb v. Barnhart, 433 F.3d 683,
11 688 (9th Cir. 2005); see e.g. Batson, 359 F.3d at 1195.  When there are legitimate reasons to
12 doubt a plaintiff's complaints, the opinions upon which those complaints are based are also
13 questionable.  See Morgan, 169, F.3d at 602 ("A physical opinion of disability 'premised to a
14 large extent upon the claimant's own accounts of [her] symptoms and limitations' may be
15 disregarded where those complaints have been 'properly discounted.'" (quoting Fair v. Bowen,
16 885 F.2d 597, 605 (9th Cir. 1989))).  Legitimate reasons exist to doubt plaintiff's credibility in
17 this case and plaintiff raises no objection in his appeal to the finding by the ALJ that plaintiff was
18 not fully credible.

19 On October 29, 2002, Dr. Stansell supplemented the medical record with a letter
20 updating his opinion of plaintiff's functional limitations.  In that letter, Dr. Stansell noted that
21 plaintiff's prescription medications had alleviated some of his symptoms.  AT 332.  However,
22 Dr. Stansell also stated that plaintiff's follow-up treatment had been limited and that he
23 continued to have difficulties with social interactions, stress tolerance, and anger control.  Id.
24 Consequently, in Dr. Stansell's opinion, plaintiff continued to be unemployable and should be
25 favorably considered for benefits.  Id.
26 /////

The ALJ discounted this opinion as its conclusion that plaintiff "continue[d] to be unemployable" invaded the exclusive province of the Commissioner to determine eligibility for benefits. The opinion of a treating physician is not conclusive on the issue of disability. 20 C.F.R. §416.927(e); Magallanes, 881 F.2d at 751. The ALJ's refusal to defer on the issue of disability was not in error.

Furthermore, as noted above, the medical evidence and opinions by other examining and nonexamining physicians run counter to this finding by Dr. Stansell. Other medical experts consistently found that plaintiff suffered few symptoms when he took his prescribed course of medication. "Impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility." Warre v. Commissioner of Social Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006); see also Odle v. Heckler, 707 F.2d 439, 440 (9th Cir. 1983)(affirming a denial of benefits and noting that the claimant's impairments were responsive to medication).

Dr. Stansell agreed with this assessment in his letter, noting that plaintiff was "stable," and that his medication has helped "alleviate some of his symptoms." AT 231. Dr. Stansell's treatment of plaintiff confirms his opinion that plaintiff was stable and responding well to his medications. Over the course of Dr. Stansell's treatment of plaintiff, he made no changes to plaintiff's prescriptions or treatment in response to any deterioration of his condition. Rather, the combination and dosages of medications prescribed by Dr. Stansell remained constant throughout his course of treatment.

The ALJ's finding that the opinion of plaintiff's treating physician should be accorded no weight was not in error. The ALJ provided specific and legitimate reasons for his rejection of Dr. Stansell's opinions, including the failure to review the medical history, the lack of objective medical evidence, the numerous contrary opinions, and an over-reliance upon plaintiff's own complaints. The findings of the ALJ will not be disturbed.

/////

1    b. The ALJ's Failure to Call a Vocational Expert to Testify at the Administrative Hearing
2 was not in Error.

3    The ALJ concluded that plaintiff suffered from nonexertional limitations that
4 limited him to unskilled work and jobs that did not require frequent social interaction with
5 others. As a result, after consulting the Medical-Vocational Guidelines, the ALJ found plaintiff
6 not disabled. This finding was not in error.

7    The Medical-Vocational Guidelines ("the grids") are in table form. The tables
8 present various combinations of factors the ALJ must consider in determining whether other
9 work is available. See generally Desrosiers, 846 F.2d at 577-78 (Pregerson, J., concurring). The
10 factors include residual functional capacity, age, education, and work experience. For each
11 combination, the grids direct a finding of either "disabled" or "not disabled."

12    There are limits on using the grids, an administrative tool to resolve individual
13 claims that fall into standardized patterns: "[T]he ALJ may apply [the grids] in lieu of taking the
14 testimony of a vocational expert only when the grids accurately and completely describe the
15 claimant's abilities and limitations." Jones v. Heckler, 760 F.2d 993, 998 (9th Cir. 1985); see
16 also Heckler v. Campbell, 461 U.S. 458, 462 n.5, 103 S. Ct. 1952, 1955 n.5 (1983). The ALJ
17 may rely on the grids, however, even when a claimant has combined exertional and nonexertional
18 limitations, if nonexertional limitations are not so significant as to impact the claimant's
19 exertional capabilities.[3] Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990), overruled on
20 other grounds, Bunnell, 947 F.2d at 341 (en banc); Polny v. Bowen, 864 F.2d 661, 663-64 (9th

---

[3] Exertional capabilities are the "primary strength activities" of sitting, standing, walking, lifting, carrying, pushing, or pulling. 20 C.F.R. § 416.969a (b) (2003); SSR 83-10, Glossary; compare Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 6 (9th Cir.1989).
   Non-exertional activities include mental, sensory, postural, manipulative and environmental matters that do not directly affect the primary strength activities. 20 C.F.R. § 416.969a (c)(2003); SSR 83-10, Glossary; Cooper, 880 F.2d at 1155 & n. 7 (citing 20 C.F.R. pt. 404, subpt. P, app. 2, § 200.00(e)). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have nonexertional (not strength-related) limitations that are not covered by the grids." Penny v. Sullivan, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., pt. 404, subpt. P, app. 2 § 200.00(d), (e)).

1  Cir. 1988); see also Odle, 707 F.2d at 439 (requiring significant limitation on exertional
2  capabilities in order to depart from the grids).

3        The Appeals Council remanded this case on November 4, 2003, pursuant to the
4  parties' stipulation in the District Court.  AT 311.  In that remand order, the Appeals Council
5  directed the ALJ to, among other things, evaluate the medical evidence provided by plaintiff's
6  treating physician, Dr. Stansell, and employ a vocational expert if "warranted by the expanded
7  record."  AT 315.  As noted above, the ALJ properly evaluated the evidence provided by
8  plaintiff's treating physician.  The decision to give this opinion no weight was supported by
9  specific and legitimate reasons.  Furthermore, none of the other directions in the remand order
10 resulted in any finding that dictated the use of a vocational expert.

11       Upon evaluation of the expanded record, the ALJ properly found no exertional
12 limitations.  AT 279.  Utilizing the special technique of 20 C.F.R. § 416.920a in order to assess
13 plaintiff's mental impairment, as required in the order of remand, the ALJ found plaintiff's
14 nonexertional limitations precluded him from anything but unskilled work.  Id.  In addition, the
15 ALJ limited plaintiff to work that did not require frequent interaction with others.  Id.

16       This finding is supported by substantial evidence in the record.  Both Dr. Daigle
17 and Dr. Foster found plaintiff to be normal or only slightly impaired in his ability to carry out
18 simple tasks.  AT 329, 172.  They both noted that plaintiff's most severe problems lay in his
19 ability to interact with coworkers and the public.  AT 328, 172.  The doctors from the State
20 Agency confirmed these findings.  While doctors issued numerous other positive and negative
21 assessments regarding areas of potential mental impairment, the ALJ's findings in this case can
22 not be disturbed.  See generally Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 599 (9th
23 Cir. 1999)(holding that the opinion of the ALJ must be upheld when evidence is susceptible to
24 more than one rational interpretation); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995).

25       Unskilled work needs little or no judgment to perform simple duties and can
26 generally be learned on the job in 30 days or less.  20 C.F.R. § 404.1568(a).  A plaintiff does not

gain work skills by performing unskilled work.  20 C.F.R. § 404.1568(a).  Furthermore, Social Security Ruling (SSR) 85-15 notes that unskilled jobs ordinarily involve dealing primarily with objects, not people.  See Silveira v. Apfel, 204 F.3d 1257, 1260 (9th Cir. 2000) ("This court defer[s] to Social Security Rulings . . . unless they are plainly erroneous or inconsistent with the Act or regulations").   That ruling also notes there are over 2,500 unskilled jobs that can be performed at the medium, light and sedentary exertion levels and that there are additional unskilled jobs available at the heavy exertion level.  SSR 85-15.

Under these circumstances, the ALJ properly relied on the grids to administratively notice that a significant number of jobs were available to plaintiff.  The ALJ's finding that plaintiff had no exertional limits is supported by substantial evidence in the record.  The limitation to unskilled work, and its inherent restrictions to infrequent public interaction with others, still leaves a significant number of jobs in the national economy for which plaintiff is qualified.  As the grids accurately described plaintiff's abilities and limitations, exertional and nonexertional, the ALJ's refusal to consult a vocational expert was not in error.

The ALJ's decision is fully supported by substantial evidence in the record and based on the proper legal standards.  Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment or remand is denied, and

2. The Commissioner's cross-motion for summary judgment is granted, and

3. This action is dismissed.

DATED: August 28, 2006.

UNITED STATES MAGISTRATE JUDGE

13
Johnson.ss.wpd